[Civ. No. 12439-S.   Second Appellate District, Division One.—April 24, 1940.]

In the Matter of the Estate of FRED JACK YOUNG, Deceased.   ELIZABETH JEFFRIES, Appellant, v. CALIFORNIA TRUST COMPANY (a Corporation), as Executor, etc., et al., Respondents.

James W. Bell and W. A. Brandenburger for Appellant.

James S. Howie and Philbrick McCoy for Respondents.

DORAN, J.—This is an appeal from a judgment declaring that the will of Fred Jack Young, deceased, executed on November 16, 1936, and theretofore admitted to probate, "is the valid, subsisting and legally sufficient last will and testament of said named decedent", and disallowing in its entirety the claim of the contestant and appellant, Elizabeth Jefferies, a first cousin of the decedent. The will in question nominated the California Trust Company as executor, and directed that the whole of the estate be distributed to the decedent's "good old friends Tom Bonetto and his wife Josephine Bonetto".

Mr. Young was an unmarried man, and, at the time of the execution of the will, was 82 years of age. He had left England at the age of fourteen years, and apparently had never returned. Appellant Elizabeth Jefferies, who resided permanently in England, had not known the decedent during his lifetime, and had at no time been in communication with him.

Mr. Young died on November 20, 1937, at the Mountain View Rest Home in Monrovia, California. The will was admitted to probate on December 17, 1937, and the California Trust Company was appointed the executor.

On May 31, 1938, said Elizabeth Jefferies filed a contest to the will, after probate. The case came on for trial and the sole question submitted to the jury for its verdict was: "Was the decedent, Fred Young, also known as Fred Jack Young, of sound mind on November 16, 1936, at the time he signed the will here in contest?" This the jury answered in the affirmative.

The record reveals that in June of 1936, the decedent had been under observation at the psychopathic ward of the Los Angeles County General Hospital; that on June 16, 1936, the Superior Court of Los Angeles County had found, after a proper hearing, that the decedent was "mentally disordered and bordering on insanity, but not dangerously insane". He was thereupon committed to the care and custody of the Rancho Los Amigos, an institution maintained for phychopathic cases in Los Angeles County. On September 11, 1936, in proceedings had for that purpose, the California Trust Company was appointed the guardian of Mr. Young's estate. Some time during the month of September, 1936, Mr. Young

was placed in the Kimball Sanitarium at La Crescenta, California.

On September 15, 1936, Mr. Allen M. Williams, an attorney at law representing the California Trust Company, the guardian, and a Mr. W. H. Light, an administrative officer of the company, visited Mr. Young at the Kimball Sanitarium. The decedent's hearing was impaired and the conversation was conducted by means of questions written on paper, which questions were answered orally by Mr. Young. Decedent was able to and did then and there give a clear and correct account of his property. Thereafter decedent, who for some reason was dissatisfied with the Kimball Sanitarium, was returned to the general hospital. He was visited there by Mr. Williams on November 9, 1936, upon which occasion he was asked if he had made a will and to whom he would like to leave his property. Decedent replied, "Tom Bonetto and his wife". It appears that the Bonettos had purchased their property from Mr. Young, and that they were neighbors and friends. Mr. Williams later prepared a will which, on November 16, 1936, was brought to the hospital for signature. The execution of the will was witnessed by a Mr. Louis T. Fletcher, who accompanied Mr. Williams, and also by Mr. Raymond A. Yelton, an attendant in decedent's ward. Mr. Williams, and the witnesses Yelton and Fletcher all testified that in their respective opinions Mr. Young was of sound mind on that occasion. The detailed testimony of these witnesses supports and justified their opinions.

According to the testimony of Mr. Charles L. Overshiner, an investigator in the psychopathic probation department, who was present at two hearings, one in July, 1936, and one in September, 1936, Mr. Young appeared to know what was being asked of him and gave intelligent answers; that he looked neatly dressed, well set and in good health, and that at the September hearing his health appeared much improved.

Two physicians, who were in attendance at the general hospital while decedent was under observation there, appeared for contestant and testified to their opinions that the decedent was insane.

Appellant contends that "the trial court erred in instructing the jury relating to the opinion of expert witnesses on the question of decedent's sanity, by limiting the jury's consideration of the testimony to the reasons given by the ex-

pert witness'', and, that ''the trial court erred in instructing the jury that the law presumed the decedent sane, and that prior adjudication of mental disorder bordering on insanity was but evidence to rebut such presumption''.

The first mentioned instruction complained of is as follows:

''Ordinarily the opinions of witnesses are not admitted in evidence, but as an exception to that rule the law allows as evidence the opinions of expert witnesses respecting the soundness or unsoundness of mind of a testator, the reasons for the opinion being given by the witness. A person who by education, study and experience has become an expert in any profession may give his opinion as such expert as to any matter material to the case in which he is called as a witness. The jury may consider such expert testimony together with the reasons, if any, given by the expert witness for his opinion to which he testifies. You are not bound by the opinion of any witness, expert or otherwise, but may give the weight you deem it entitled to and may reject it if in your opinion the reasons given for it are unsound.''

The construction placed thereon by appellant is unwarranted.

The second mentioned instruction correctly stated the law. It should be emphasized that at the hearing on June 16, 1936, the court had concluded merely that decedent was ''mentally disordered and bordering on insanity''. Moreover, proceedings for the purpose of adjudicating the mental status, although satisfactory to all parties concerned, are frequently uncontested and therefore no more comprehensive or extensive than the particular circumstances require. A judgment based upon such a proceeding may be valid but it is not conclusive on the question of decedent's incompetency for the purpose of testamentary disposition. There is little, if any, merit to the appeal.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.